

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

November 27, 1991

Ms. Jeannene Fox
Acting Administrator
Texas Alcoholic Beverage Commission
P. O. Box 13127
Austin, Texas 78711-3127

Opinion No. DM-62

Re: Collection of fees for small stakes bingo (RQ-219)

Dear Ms. Fox:

You have requested our opinion on several questions regarding the collection of fees for certain games of small stakes bingo. You indicate that

> [i]n addition to bingo games played on hard cards and disposable paper cards, bingo players also play instant bingo .... Most of the winners on instant bingo cards are $.50 or $1.00 winners.

Bingo is regulated by article 179d, V.T.C.S. A recent legislative enactment added section 19b to the statute to provide for the imposition of fees on bingo games. That provision states:

> Sec. 19b. (a) An authorized organization licensed to conduct bingo shall collect a fee from each person who wins a prize in a bingo game.
>
> (b) The fee imposed by this section is three percent of the amount or value of the prize.
>
> (c) A licensed authorized organization shall report and remit the fee imposed by this section at the same time and in the same manner as the gross receipts tax under Section 20 of this Act.

Acts 1991, 72d Leg., 1st C.S., ch. 5, § 11.031, Vernon's Sess. Law Serv. at 184.

You first ask whether "instant bingo" constitutes a bingo game for purposes of article 179d. "Bingo" or "game" is defined in section 2(2) thereof as

> a specific game of chance, commonly known as bingo or lotto, in which prizes are awarded on the basis of designated numbers or symbols on a card conforming to numbers or symbols selected at random.

Whether a particular game described as "instant bingo" falls within the definition in section 2(2) requires the resolution of factual issues that cannot be addressed in the opinion process.[1] We need not address any specific game, however, since the question you raise about taxes is relevant to any bingo game with small stakes.

You also ask whether the Alcoholic Beverage Commission may waive the fee on bingo prizes of $1.00 or less. You state that organizations that conduct small stakes games complain that the cost of hiring additional workers to collect the fee from small stakes bingo winners would be in excess of what it would cost the organizations to pay the prize fee themselves and would bring the state a very small amount of revenue.

A number of prior opinions hold that a waiver of fees that an administrative body is required to collect constitutes a suspension of laws, in contravention of article I, section 28, of the Texas Constitution. In Attorney General Opinion O-4631 (1942), for example, the State Board of Hairdressers and Cosmetologists sought to waive the required payment of license renewal fees for those individuals who were called into military service. In Attorney General Opinion O-6444 (1945), the State Board of Barber Examiners asked whether it might exempt registered barbers from payment of renewal fees during their tenure in the armed forces. In Attorney General Opinion O-6754 (1946), a county clerk sought permission to waive the $1.00 marriage license fee for members of the armed forces. In each case, the attorney general replied that the official was without authority to waive the particular fee because of article I, section 28. Likewise, we are here compelled to conclude, regardless of the amount of revenue obtained from the imposition of fees

---

[1]A resolution of this question would also require us to explore the meaning of "bingo" as that term was understood by the voters at the time of the adoption of the provision of article III, section 47, of the constitution authorizing bingo games.

on winnings in games of bingo, that the Alcoholic Beverage Commission is not empowered to waive or exempt the fee imposed on any prize.

Finally, you ask whether the organization that conducts the bingo game may itself pay the fee. The answer to this question, theoretically, is "no," as the following example will demonstrate. Suppose a bingo player wins $100.00. The statute assesses the fee on the *total prize*, and, if the organization paid the fee on $100.00, the total prize would be $103.00, thus necessitating the collection of an additional 9 cents. In other words, when the fee is paid by the organization, the amount of the fee must be added to the value of the prize, which, in turn, generates an additional fee to be paid. However, for small prizes, such as those about which you inquire, this problem is avoided. We use as an example a bingo prize worth 50 cents. The total value of such a prize could be transformed into a prize of 52 cents without generating any additional fee. In this example, the winner receives 50 cents and the state 2 cents. Likewise, a prize of one dollar could be transformed into a prize of $1.03, with $1.00 going to the individual and 3 cents to the state. This procedure works with small amounts because the fee on prizes of 50 cents is the same as the fee on prizes of 52 cents, and the fee imposed on prizes of $1.00 is the same as the fee imposed on prizes of $1.03. Thus, adding the fee to the amount paid to the winner does not increase the amount of fee owed on the *total prize.* With sufficiently large prizes, however, the principle breaks down.[2] Thus, in answer to your third question, it is our opinion that while the organization may not itself literally pay the fee on prizes of 50 cents and $1.00, it may slightly alter the amount of the prizes awarded to achieve substantially the same result.

## SUMMARY

The Alcoholic Beverage Commission may not waive the three percent fee for small prizes awarded in games of bingo. Although the organization conducting the bingo game may not itself pay the fee, it may achieve substantially the same result for

---

[2]With a three percent fee, the principle breaks down at a point between $5.00 and $6.00. The fee on a $5.00 prize is the same as a fee on a prize of $5.15, but the fee on a $6.00 prize is not the same as a fee on a prize of $6.18.

small prizes by slightly altering the face amount of the prize awarded.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

JUDGE ZOLLIE STEAKLEY (Ret)
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Rick Gilpin
Assistant Attorney General